IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| ANDREW BROWN, individually, and on behalf of a class of all persons similarly situated, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Case No. 1:09-CV-0679-BBM Complaint – Class Action |
| FIRST TENNESSEE BANK NATIONAL ASSOCIATION, Individually and d/b/a FIRST HORIZON HOME LOANS, | * * * * * | |
| Defendant. | * | |

## FIRST AMENDED COMPLAINT – CLASS ACTION

Plaintiff Andrew Brown, pursuant to Rule 15(a)[1] of the Federal Rules of

Civil Procedure, files this First Amended Complaint on behalf of himself and on

behalf of a class of all persons similarly situated against Defendant First Tennessee

Bank National Association, individually and doing business as Horizon Home

Loan Corporation ("First Horizon"), showing the Court the following:

---

[1] Plaintiff may amend "as a matter of course" as he has not been "served with a responsive pleading." Fed. R. Civ. P. 15(a)(1); *see Grant v. Countrywide Home Loans, Inc.*, No. 1:08-cv-1547-RWS, 2009 WL 1437566, *8 (N.D. Ga. 2009) ("A motion to dismiss is not considered a responsive pleading."); *Thoroughbred Legends, LLC v. The Walt Disney Co.*, No. 1:07-cv-1275-BBM, 2008 WL 616253, at * 2 (N.D. Ga. 2008) (may amend complaint where no responsive pleading filed).

## I.   PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, Andrew Brown, resides in Fayetteville, Georgia.  His home, which served as collateral for an Interest Rate Reduction Refinancing Loan ("IRRRL") guaranteed by the United States Department of Veterans Affairs ("VA"), is located at 12256 Crestwood Court, Fayetteville, Georgia.

2.     First Horizon is a corporation whose principal place of business is located at 165 Madison Avenue, Eighth Floor, Memphis, Tennessee 38103.  First Horizon may properly be served with a summons and a copy of this Complaint by delivery of the papers to its registered agent for service of process, C.T. Corporation System, 1201 Peachtree Street, N.E., Fulton County, Atlanta, Georgia 30361.

3.     The Court has jurisdiction over the subject of this case under 28 U.S.C. § 1331 and under 18 U.S.C. § 1964 because this case asserts civil claims and rights under the federal Racketeering Influenced Corrupt Organizations Act (RICO), codified at 18 U.S.C. § 1961 *et seq*.

4.     The Court has jurisdiction over Plaintiff and over Defendant because Plaintiff resides in this district and because Defendants transact sufficient business in this district to be subject to the jurisdiction of this Court and because Defendant

resides in this district.  Plaintiff refinanced his home mortgage through a VA

IRRRL and closed the loan at a location within this district.

5.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because

a substantial part of the events or omissions giving rise to the claim occurred in this

district.  Venue is also proper in this district under 18 U.S.C. § 1965(a) because

Defendant resides, is found, has an agent, or transacts its affairs in this district.

## II.     **OPERATIVE FACTS**

6.     First Horizon has engaged in a systematic scheme to charge United

States military veteran-borrowers certain fees and charges in connection with VA

IRRRLs that federal law requires the lender to pay.

7.     The charges occur when a United States military veteran refinances

his or her home mortgage by obtaining a loan guaranteed by the VA ("VA loan").

8.     Specifically, First Horizon, through its closing attorneys,

systematically charges certain fees, such as attorney fees, to United States military

veteran-borrowers, which fees by federal regulation are required to be paid by the

lender, First Horizon.

9.     These fees are charged to the borrower because First Horizon, through

its closing attorneys and agents, intentionally and knowingly fails to properly

disclose the fees on the HUD-1 form in connection with VA IRRRLs and instead moves the fees to the wrong lines of the HUD-1 form.

10. For instance, closing attorney fees cannot lawfully be charged to the borrower in connection with a VA IRRRL, except in certain circumstances that are not applicable here.[2]

11. Closing attorney fees are required to be listed on line 1101 or 1107 of the HUD-1 form.

12. If a fee is disclosed on line 1101 or 1107 of a HUD-1 form, it is an attorney fee, and if it is incurred in connection with a VA IRRRL, that charge must be borne by the lender.

13. Other types of fees, such as fees for title search and title examination, can lawfully be charged to the borrower in connection with a VA IRRRL.

14. Title search and title examination fees are required to be listed on lines 1102 and 1103 of the HUD-1 form, respectively.

---

[2] More specifically, the law allows certain charges to be allocated to the United States military veteran-borrower but only to the extent the total of such charges does not exceed 1% of the loan amount (the "1% cap"). In order to allocate closing attorney fees to the veteran-borrower at all, such fees must be included within the line items of the HUD-1 form that are subject to the "1% cap." That is inapplicable here, as no attorney fees are included within the fees that are subject to the "1% cap" and such cap has already been exhausted with other charges.

15.    If a fee is disclosed on line 1102 or 1103 of a HUD-1 form, it is supposed to be a title search or title examination fee, and even if it is incurred in connection with a VA IRRRL, that fee (if, in fact, for title search or title examination) may lawfully be charged to the borrower.

16.    First Horizon discloses closing attorney fee charges on line 1101 or 1107 in connection with (a) VA purchase money loans, (b) conventional refinance loans, and (c) conventional purchase money loans.  In comparison, First Horizon does not disclose those same charges on line 1101 or 1107 in connection with VA IRRRLs.

17.    First Horizon intentionally and knowingly conceals attorney fee charges in connection with VA IRRRLs by fraudulently bundling them into title search and title examination charges so that the charges can be included in the borrower's column, so that the charges are borne by the borrower and not by the lender.

18.    The VA will not approve, and therefore will not guarantee, a VA IRRRL if it contains a charge (for closing attorney fees) listed on line 1101 or 1107

of the HUD-1 form if that charge is listed[3] in the borrower's column (meaning the borrower pays the charge).

19.    Thus, Defendant discloses some or all of the fees paid to the closing attorney on line 1101 or 1107 of the HUD-1 form in connection with VA purchase money loans, conventional refinance loans, and conventional purchase money loans, yet Defendant engages in a systematic course of conduct to never, or nearly never, disclose the same payments made to the closing attorney on line 1101 or 1107 of the HUD-1 form in connection with a VA IRRRL because such a charge in connection with a VA IRRRL must legally be borne by the lender.  Instead, in connection with a VA IRRRL, fees paid to the closing attorney that would be disclosed on line 1101 or 1107 of the HUD-1 form with any other type loan are improperly and fraudulently bundled into charges reflected on lines 1102 and/or 1103 of the HUD-1 form so as to facilitate illegally charging the fees to the United States military veteran-borrower.

20.    The illegal and unauthorized fees are impermissibly included in the principal loan amount financed by the borrower in violation of applicable federal law.

---

[3] The charge could lawfully be listed on line 1101 or 1107 of the HUD-1 form in the lender's column (meaning the lender pays the charge).

21.     The lender is further required by federal regulation to certify in writing that "[t]he lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedule set forth in paragraph (d) of 38 CFR 36.4312."

22.     First Horizon executed the required certification with respect to Plaintiff's IRRRL.

23.     The certification made by Defendant with respect to Plaintiff's IRRRL was false and was transmitted through the U. S. mails and by wire.

24.     The federal government relied upon the representations made in the certifications.  Without the certifications, the Department of Veterans Affairs would not have issued a guarantee for Plaintiff's IRRRL.

25.     Plaintiff relied upon the representations made in the loan closing documents, including the representation that the lender had not imposed any charges or fees against the veteran borrower in excess of those permissible under federal law.

26.     The point of the HUD-1 Settlement Statement and required certification is for the parties to rely on the representations made therein, and the parties' preparation of and execution of the document along with on-going

mortgage payments in the amounts listed reflect that reasonable and on-going reliance.

27.     Plaintiff was harmed because he was illegally required to pay for fees that federal law specifically prohibits lenders, like First Horizon, from charging borrowers, like Plaintiff.

**B.     Plaintiff's Transaction And Other Transactions That Form Part Of The RICO Scheme**

**1.     Plaintiff's transaction**

28.     On February 26, 2007, Defendant First Horizon closed a VA IRRRL with Plaintiff, the veteran-borrower.  The closing took place at 8100 East Maplewood Avenue, #200, Greenwood Village, Colorado 80111.

29.     Defendant, through its settlement agent, Mercury Settlement Services, disclosed no attorney fee on the HUD-1 form.  Instead, Defendant listed a title examination fee in the amount of $775, which included the ordinary charge for settlement closing and/or attorney fees.

30.     Defendant, through its settlement agent, Mercury Settlement Services, misrepresented to Plaintiff, through the HUD-1 form provided at the closing, that Plaintiff was not being charged a settlement closing and/or attorney fee when, in fact, Plaintiff was being charged such a fee by the inclusion of the fee in the charge for title examination.  This improper "bundling" was done for the express purpose

of shifting the settlement closing and/or attorney fee, which may not be charged to the borrower under federal law, to the veteran-borrower, in this case, Plaintiff. This improper "bundling" to shift the settlement closing and/or attorney fee to the veteran-borrower is part of Defendant's regular way of doing business as an ongoing entity.

31.     Defendant further certified in writing that "[t]he lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedule set forth in paragraph (d) of 38 CFR 36.4312."

32.     Defendant executed the required certification with respect to Plaintiff's VA IRRRL.

33.     The certification made by Defendant with respect to Plaintiff's VA IRRRL was false and was transmitted through the U. S. mails and by wire,  the same day as the closing or very shortly thereafter.

34.     The federal government relied upon the representations made in the certification.  Without the certification, the Department of Veterans' Affairs would not have issued a guarantee for Plaintiff's VA IRRRL.

35.     Plaintiff relied upon the representations made in the loan closing documents, including the representation that the lender did not impose any charges

or fees against the veteran borrower in excess of those permissible under federal law. Plaintiff further relied upon the representation that he was not being charged a settlement closing and/or attorney fee. These representations were contained in the HUD-1 form.

36.     The point of the HUD-1 Settlement Statement is for Plaintiff to rely on the representations made therein, and the parties' preparation of and execution of the document along with Plaintiff's on-going mortgage payments in the amounts listed reflect that reasonable reliance.

37.     Plaintiff was harmed because he was illegally required to pay for fees that federal law specifically prohibits lenders from charging such borrowers.

38.     The bundling of settlement closing and/or attorney fees into charges for title examination misled Plaintiff into believing that he was not being charged settlement closing and/or attorney fees, when, in fact, he was.

39.     Defendant gained the improper attorney fees that were bundled into Plaintiff's title examination charges.

**2.     An additional transaction – The Wynns**

40.     On March 20, 2002, Defendant closed a VA IRRRL with Greta and Michael Wynn, the borrowers. The closing took place at 240 East Lanier Avenue, Fayetteville, Georgia.

41.     Defendant disclosed no settlement closing and/or attorney fee on the HUD-1 form.  Instead, Defendant listed a title examination fee in the amount of $806.89, which included the ordinary charge for settlement closing and/or attorney fees.

42.     Defendant misrepresented to Ms. Wynn, through the HUD-1 form provided at the closing, that the Wynns were not being charged a settlement closing and/or attorney fee when, in fact, they were being charged such a fee by its inclusion in the charge for title examination.  This improper "bundling" was done for the express purpose of shifting the settlement closing and/or attorney fee, which may not be charged to the borrower under federal law, to the veteran-borrower, in this case, the Wynns.  This improper "bundling" to shift the settlement closing and/or attorney fee to the veteran-borrower is part of Defendant's regular way of doing business as an ongoing entity.

43.     Defendant further certified in writing that "[t]he lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedule set forth in paragraph (d) of 38 CFR 36.4312."

44.     Defendant executed the required certifications with respect to the Wynn VA IRRRL.

45.     The certification made by Defendant with respect to the Wynn VA IRRRL was false and was transmitted through the U. S. mails and by wire, the same day as the closing or very shortly thereafter.

46.     The federal government relied upon the representations made in the certification. Without the certification, the Department of Veterans' Affairs would not have issued a guarantee for the Wynn VA IRRRL.

47.     The Wynns relied upon the representations made in the loan closing documents, including the representation that the lender did not impose any charges or fees against the veteran borrower in excess of those permissible under federal law. The Wynns further relied upon the representation that they were not being charged a settlement closing and/or attorney fee. These representations were contained in the HUD-1 form.

48.     The point of the HUD-1 Settlement Statement is for the Wynns to rely on the representations made therein, and the parties' preparation of and execution of the document along the Wynns' on-going mortgage payments in the amounts listed reflect that reasonable reliance.

49.     The Wynns were harmed because they were illegally required to pay for fees that federal law specifically prohibits lenders from charging such borrowers.

50.   The bundling of attorney fees into charges for title examination misled the Wynns into believing that they were not being charged attorney fees, when, in fact, they were.

51.   Defendant gained the improper attorney fees that were bundled into the Wynns' title examination charges.

## III.   CLAIMS MADE

## A.   Count I:  Liability For Violation Of Georgia's RICO Act

52.   This is an action asserting civil Georgia-RICO claims, pursuant to O.C.G.A. § 16-14-1, *et seq*., on behalf of Plaintiff, individually and on behalf of a class of persons who refinanced their mortgages through a VA IRRRL.

53.   Defendants through a pattern of racketeering activity or proceeds derived therefrom, maintained both an interest in and control of an enterprise and money in violation of O.C.G.A. § 16-14-4(a).

54.   Defendant was associated with an enterprise and conducted and participated in the enterprise through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(b).

55.   Defendant conspired to violate both O.C.G.A. § 16-14-4(a) and (b).

56.   The predicate acts that make up the pattern of racketeering activity include the following:

(a)     violation of O.C.G.A. § 16-8-102(1), (2), (3), and (4); residential mortgage fraud;

(b)     violation of 18 U.S.C. § 1341; mail fraud in connection with multiple and continuous use of the U.S. mail in furtherance of the fraudulent scheme, including the sending of the federally-required certification, HUD-1 form, closing documents, and other loan-related documents by and between the lender First Horizon, the underwriter, the closing law firms, the loan broker, the title company, and the Department of Veterans Affairs; and

(c)     violation of 18 U.S.C. § 1343; wire fraud in connection with multiple and continuous use of the U.S. wires in furtherance of the fraudulent scheme, including the sending of the federally-required certification, HUD-1 form, closing documents, and other loan-related documents by and between the lender First Horizon, the underwriter, the closing law firms, the loan broker, the title company, and the Department of Veterans Affairs.

57.     Defendant committed at least two of the predicate acts listed in the preceding paragraph in furtherance of closing Plaintiff's VA IRRRL.

58.     On information and belief, Defendant has committed more than forty and perhaps thousands of the predicate acts listed in paragraph 56 in furtherance of the scheme to charge U.S. military veteran-borrowers illegal charges in connection with VA IRRRLs.  These predicate acts involve the same or similar intent, results, accomplices, victims, and methods of commission and are not isolated incidents.

59.     The enterprise is composed of First Horizon, the closing lawyers and/or firms, the underwriters, the independent brokers, and title companies.

60.     The members of the enterprise all share, separate and apart from their mainstream businesses, the common goal of increasing their own revenues and profit as a proximate result of First Horizon charging and collecting illegal and unauthorized fees in connection with VA IRRRLs.

61.     The independent brokers are not employees of First Horizon or agents of First Horizon for the purposes of, and under the law applicable to, the RICO claims asserted in this case.  The closing lawyers and/or firms are not employees of First Horizon.  The underwriters are typically, but not necessarily always, employees of First Horizon.

62.     The fact that the illegal and unauthorized fees are improperly moved to, and disguised within, another category of permissible charges evidences and demonstrates that First Horizon knows of their existence and illegality.

63.     First Horizon makes loans from Texas or other states outside Georgia and closes the loans, transmits loan documentation, and makes the required federal certifications from and to Georgia and other states using U.S. mails and wires.

64.     The closing lawyers close loans in Georgia and multiple other states and transmit the loan documentation to First Horizon using U.S. mails and wires.

65.     The underwriters obtain information about the borrower by mail, email, telephone, or facsimile, and the loan documents are sent to the closing lawyers via U. S. mail, by email, facsimile, or other interstate mail or wire transmission.

66.     The closing funds, including the illegal and unauthorized charges, are paid by the borrowers by check or other funds ultimately transferred to First Horizon via the U. S. mail or by electronic funds transfers or other similar methods.

67.     Federally required certifications and other documents utilized in the process are transmitted to the federal government via the U. S. mail or by other interstate mail or wire transmission.

68.     First Horizon conducted and participated in the enterprise through an on-going, open-ended pattern of racketeering activity.  The predicate acts for this pattern are regular, systematic, and continuous uses by First Horizon and closing

lawyers of the United States Postal Service, the wires, and email to transmit documents which are significant components of the scheme by First Horizon and the closing lawyers to defraud United States military veteran-borrowers who are led to believe that they are being charged only lawful and authorized charges when, in fact, they are being charged illegal and unauthorized charges.  Such use of the mail and wires violates 18 U.S.C. § 1341 (mail) and 18 U.S.C. § 1343 (wire).

69.    Each use by First Horizon and the closing lawyers of the mail to send a federally required certification to the Department of Veterans Affairs and each use of the mail, wires, or email by First Horizon and/or the closing lawyers to send loan related documents and information, as well as illegal and unauthorized payments, violates 18 U.S.C. § 1341 and/or § 1343 because First Horizon and the closing lawyers knowingly participated in the scheme to fraudulently charge United States military veteran-borrowers illegal and unauthorized charges, and used those mailings to further their interests in that scheme.

70.    Thus, First Horizon committed multiple acts of mail and wire fraud, reasonably estimated to be in the thousands, based on the number of VA IRRRLs made by First Horizon and the number of uses of the mail and wires for each transaction.

71.     Plaintiff believes that there have been thousands of victims of the scheme.  Plaintiff also believes that First Horizon continues in its scheme at the present and, in all probability, will continue to do so.  The predicate acts or offenses shown herein are part of Defendant's regular way of doing business as an ongoing entity.

72.     The Lender's Certificate required by 38 C.F.R. § 36.4312(a), HUD Form 92900-A (VA Form 26-1802a), is a significant part of the scheme to defraud United States military veteran-borrowers in that the certification amounts to a written and false representation to the Department of Veterans Affairs that "[t]he lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedule set forth in paragraph (d) of 38 CFR 36.4312."

73.     In the absence of this representation, the Government would not have issued the guarantee for Plaintiff's loan nor for the loans of the class members.

74.     The certification is transmitted to the Government by mail and/or wire in connection with every VA IRRRL made by First Horizon, including Plaintiff's loan and the loans of the class members.

75.     The HUD-1 forms are a significant part of the scheme to defraud in that the form itemizes, line by line, the charges paid by the parties to the IRRRL,

and it falsely represents and states that the United States military veteran-borrower is not paying certain fees, such as attorney fees, that are required to be paid by the lender when, in fact, the veteran borrower is being charged for those fees.

76.     In the absence of this false representation (if, for instance, the attorney fee charge is truthfully disclosed on the form), the Government would not issue the guarantee for the loan or the United States military veteran-borrower would not be charged the illegal and unauthorized fee.

77.     The HUD-1 is transmitted to the Government and by and between First Horizon and the closing lawyers by mail and/or wire in connection with every VA IRRRL made by First Horizon, including Plaintiff's loan and the loans of the class members.

78.     Plaintiff and the class members are victims of a continuing, wide-spread scheme to defraud thousands of United States military veteran-borrowers into paying certain fees, such as attorney fees, in connection with VA IRRRLs when the fees are legally the responsibility of the lenders, such as First Horizon.

79.     The normally-applicable five-year statute of limitations is tolled for the class members because of First Horizon's fraudulent concealment of the scheme, as reflected by the fact that Defendant disguised the illegal and unauthorized charges so as to mislead both the United States military veteran-

borrowers and also the Government, which would not have guaranteed the loans but for the concealment.

80.    Plaintiff reasonably relied on the express representation that the charges reflected on the applicable HUD-1 were as represented and lawful.  As a result of such reliance, Plaintiff has suffered actual damages and has been injured as a direct result of the enterprise.

81.    The class members reasonably relied on the express representation that the charges reflected on the applicable HUD-1 were as represented and lawful. Evidence of their reliance is their signatures on the HUD-1 forms, as well as their continued payments of the sums set forth therein.  As a result of such reliance, class members suffered actual damages and have been injured as a direct result of the enterprise.

**B.    Count II:  Liability For Punitive Damages (Georgia RICO)**

82.    First Horizon acted fraudulently and with the intent to deceive Plaintiff, the class members, and the United States Department of Veterans Affairs, as well as many other borrowers.  The misconduct was willful and wanton, fraudulent, intentional, and undertaken with conscious indifference to the likely consequences as defined under O.C.G.A. §51-12-5.1(b).  Such conduct warrants the imposition of punitive damages.

83.     First Horizon acted with specific intent to cause harm as defined under O.C.G.A. § 51-12-5.1(f).

**C.      Count III:  Liability For Violation Of The Federal RICO Act**

84.     Defendant violated 18 U.S.C. § 1962(c) by conducting or participating in the conduct of an enterprise through a pattern of racketeering activity, and in all reasonable probability will continue to do so.  Plaintiff and the Class have been injured by reason of Defendant's conduct described in this Complaint.  Plaintiff asserts this Count under 18 U.S.C. § 1964 on behalf of himself and on behalf of a class of all persons similarly situated and asserts all rights and seeks all remedies provided by 18 U.S.C. § 1964.

85.     The RICO enterprise relating to which Plaintiff asserts this Count is the association of First Horizon, closing law firms and lawyers, the loan underwriters, title companies, and independent brokers.  Through control of and participation in this enterprise, First Horizon carried out the scheme to charge United States military veteran-borrowers illegal and unauthorized charges for certain fees that are required by federal law to be borne by First Horizon in connection with VA IRRRLs.  The members of the enterprise have a common interest in their enterprise:  receiving revenue and profit either directly or indirectly

as a proximate result of the illegal and unauthorized charges at the expense of the United States military veteran-borrowers.

86.     The independent brokers are not employees of First Horizon or agents of First Horizon for the purposes of, and under the law applicable to, the claims in this case.  The closing lawyers and firms are not employees of First Horizon.  The underwriters are typically, but not necessarily always, employees of First Horizon.

87.     First Horizon uses interstate commerce to further the enterprise.

88.     First Horizon makes loans from outside Georgia and closes the loans, transmits loan documentation, and makes the required federal certifications to and from Georgia and other states.

89.     The closing lawyers and firms closes loans in Georgia and multiple other states and transmits the loan documentation to First Horizon outside Georgia.

90.     The underwriters obtain information about the borrower by mail, email, telephone, or facsimile, and the loan documents are sent to the closing lawyers and firms via United States mail, by email, facsimile, or other interstate mail or wire transmission.

91.     The closing funds, including the illegal and unauthorized charges, are paid by the borrowers by check or other funds ultimately transferred to First

Horizon via the United States mail or by electronic funds transfers or other similar methods.

92.     Federally required certifications and other documents utilized in the process are transmitted to the federal government via the United States mail or by other interstate mail or wire transmission.

93.     First Horizon conducted and participated in the enterprise through an on-going, open-ended pattern of racketeering activity.  The predicate acts for this pattern are regular, systematic, and continuous uses by First Horizon and the closing lawyers and firms of the United States Postal Service, the wires, and email to transmit documents which are significant components of the scheme by First Horizon to defraud United States military veteran-borrowers who are led to believe that they are being charged only lawful and authorized charges when, in fact, they are being charged illegal and unauthorized charges.  That use of the mail and wires violates 18 U.S.C. §§ 1341 and 1343, the federal mail and wire fraud statute.

94.     Each use by First Horizon and the closing lawyers and firms of the mail to send a federally required certification to the Department of Veterans Affairs and each use of the mail, wires, or email by First Horizon and/or the closing lawyers or firms to send loan related documents and information, as well as illegal and unauthorized payments, violates 18 U.S.C. §§ 1341 and/or 1343

because First Horizon knowingly participated in the scheme to fraudulently charge United States military veteran-borrowers illegal and unauthorized charges, and used those mailings to further their interests in that scheme.

95.     Thus, during the Class Period, First Horizon committed multiple acts of mail and wire fraud, reasonably estimated to be in the thousands, based on the number of VA IRRRLs made by First Horizon and the number of uses of the mail and wires for each transaction.

96.     Plaintiff believes that there have been thousands of victims of the scheme during the Class Period.  Plaintiff also believes that First Horizon continues in its scheme at the present and, in all probability, will continue to do so. The predicate acts or offenses shown herein are part of Defendant's regular way of doing business as an ongoing entity.

97.     The Lender's Certificate required by 38 C.F.R. § 36.4312(a), VA Form 26-1802a (HUD Form 92900-A), is a significant part of the scheme to defraud United States military veteran-borrowers in that the certification amounts to a written and false representation to the Department of Veterans Affairs that "[t]he lender has not imposed and will not impose any charges or fees against the veteran borrower in excess of those permissible under the schedule set forth in paragraph (d) of 38 CFR 36.4312."

98.   In the absence of this representation, the Government would not have issued the guarantee for the loan.

99.   The certification is transmitted to the Government by mail and/or wire in connection with every VA IRRRL made by First Horizon, including Plaintiff's loan and the loans of the class members.

100.   The HUD-1 forms are a significant part of the scheme to defraud in that the form itemizes, line by line, the charges paid by the parties to the IRRRL, and it falsely represents and states that the United States military veteran-borrower is not paying certain fees, such as attorney fees, that are required to be paid by the lender when, in fact, the veteran borrower is being charged for those fees.

101.   In the absence of this false representation (if, for instance, the attorney fee charge were identified honestly on the form), the Government would not issue the guarantee for the loan or the United States military veteran-borrower would not be charged the illegal and unauthorized fee.

102.   The HUD-1 is transmitted to the Government and by and between First Horizon and the closing lawyers and firms by mail and/or wire in connection with every VA IRRRL made by First Horizon, including Plaintiff's loan and the loans of the class members.

**D.     Count IV:  Federal RICO Conspiracy In Violation Of 18 U.S.C. § 1962(d)**

103.   Defendant also violated 18 U.S.C. § 1962(d) because it knowingly joined in the conspiracy to participate in the RICO enterprise and participated in the conduct of the enterprise by the regular, systematic, and continuous use of the United States mail and wires to commit the predicate offenses of mail and wire fraud.  Plaintiff and the Class have been injured by reason of the conspiracy, and the conspiracy is the direct and proximate cause of Plaintiff's injuries and the injuries suffered by the Class.

**IV.    <u>CLASS ACTION ALLEGATIONS</u>**

104.   Plaintiff, as did thousands of other United States military veteran-borrowers across the United States, refinanced his home mortgage loan and was charged illegal and unauthorized charges for fees, such as attorney fees, that federal law required First Horizon to pay.

105.   As was the case with respect to thousands of other VA IRRRLs, First Horizon misrepresented to the Government that no illegal and unauthorized charges had been made and fraudulently concealed the illegal and unauthorized charges both from the Government and the United States military veteran-borrowers.

106.   Plaintiff, as did thousands of other United States military veteran-borrowers, received the misrepresentation about the fees he was being charged. And as with thousands of other United States military veteran-borrowers in effectively identical transactions, the representations were false.

107.   Plaintiff and the class are victims of a continuing, wide-spread scheme to deceive thousands of United States military veteran-borrowers into paying certain fees, such as attorney fees, in connection with VA IRRRLs when the fees were legally the responsibility of the lenders, such as First Horizon.

**A.**    **Class Definition:  The Identity Of The Class Members Can Be Readily Determined.**

108.   In accordance with Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and on behalf of a class of all others similarly situated ("Class").

109.   With respect to Counts I and II, Plaintiff seeks certification of the following Rule 23(b)(3) class, defined as follows:

All Georgia citizens who received an IRRRL from First Horizon who were charged fees not authorized by 38 C.F.R. § 36.4312 through a charge entered on either line 1102 and/or 1103 of the applicable HUD-1 form.

The precise identity of the class members is readily ascertainable using upon common, manageable proof including HUD-1 Forms maintained by First Horizon for IRRRL borrowers.  Accordingly, there will be no need for a trier of fact to consider evidence on any individual claim.

110.   With respect to Counts III and IV, Plaintiff seeks certification of the following Rule 23(b)(3) class, defined as follows:

> All persons who received an IRRRL from First Horizon who were charged fees not authorized by 38 C.F.R. § 36.4312 through a charge entered on either line 1102 and/or 1103 of the applicable HUD-1 Form.

The precise identity of class members is readily ascertainable using common, manageable proof including HUD-1 Forms maintained by First Horizon for IRRRL borrowers.  Accordingly, there will be no need for a trier of fact to consider evidence on any individual claim.

111.   With respect to the class as to First Horizon set forth above in paragraphs 85 and 86, the Class Period extends from the date this Complaint is filed back through and inclusive of the first time First Horizon charged a Class Member for those fees set forth in the class definition, such as attorney fees, in violation of applicable federal regulations.  The normally-applicable statute of

limitations is tolled because of First Horizon's fraudulent concealment of the scheme, as reflected by the fact that Defendant disguised the illegal and unauthorized charges so as to mislead both the United States military veteran-borrowers and also the Government, which would not have guaranteed the loans but for the concealment.

112.    Plaintiff and the other members of the Class have reasonably relied on the express representation that the charges reflected on the applicable HUD-1 were as represented and lawful.  As a result of such reliance, they have suffered actual damages and have been injured for the purposes of 18 U.S.C. § 1964 as a direct result of the enterprise.  Their actual damages are believed to average between $350 and $600 per loan, which is the difference between ordinary and reasonable "abstract or title search" and "title examination" fees and those fees charged to the borrowers by inclusion of illegal and unauthorized fees, plus interest Plaintiff and the class members were charged because the illegal fees were included in the loans.

**B.      The Class Satisfies The Numerosity Requirement.**

113.    The Class is so numerous that joinder of all members is impracticable. The exact number and identities of class members are unknown at this time and

can be ascertained through appropriate discovery.  Plaintiff's counsel believe the number of class members to be in the thousands.

**C.      Questions Of Law And Fact Common To The Class Exist.**

114.   Questions of law and fact of common and general interest to the class exist as to all class members and predominate over any questions affecting only individual members of the class.  Said common questions include, but are not limited to, the following:

(a)      Whether charges for settlement closing attorney fees should be disclosed on line 1101 or 1107 of the HUD-1 form;

(b)      Whether it is permissible, in connection with a VA IRRRL, to group charges for settlement closing attorney fees with "title exam" fees and disclose them on line 1103 of the HUD-1 form;

(c)      What is an appropriate and reasonable charge, in connection with a VA IRRRL, for "title exam" fees;

(d)      Whether it is lawful to disclose on the HUD-1 form fees that are not authorized to be charged to the borrower in connection with a VA IRRRL in such a way as to facilitate charging the borrower for those fees;

(e)     Whether Defendant engaged in mail and/or wire fraud by transmitting

settlement documents with mis-identified charges through the U.S.

mail and wires, for the purpose of obtaining money from veteran-

borrowers;

(f)     Whether Defendant violated the law by certifying that no charges had

been made in violation of VA regulations;

(g)     Whether Defendant engaged in mail and/or wire fraud by transmitting

false certifications through the U.S. mail and wires, for the purpose of

obtaining money from veteran-borrowers;

(h)     Whether Defendant violated O.C.G.A. § 16-8-102(1), (2), (3), and (4),

relating to residential mortgage fraud;

(i)     Whether the VA would have guaranteed class member IRRRL loans

had all charges been disclosed on the correct line(s) of the HUD-1

forms; and

(j)     Whether Defendant conspired to commit the acts set forth herein.

**D.     Plaintiff's Claims Are Typical.**

115.   The claims of or defenses against Plaintiff, as a representative party,

are typical of the claims of or defenses against the Class, in that all such claims

arise out of the actions of First Horizon charging unauthorized fees to borrowers in

connection with IRRRLs.  Plaintiff and other class members have suffered a

common injury arising out of Defendant's common course of conduct as alleged

herein.  The provisions of the HUD-1 forms are the same or substantially the same

for each class member, as such provisions are in accordance with the applicable

federal law addressing IRRRLs.

**E.      Plaintiff And His Counsel Will Adequately Represent The Class.**

116.   Plaintiff, as the representative party for the Class, will fairly and

adequately protect the interests of the members of the Class and has no interest

antagonistic to or in conflict with those of class members.

117.   Plaintiff has retained class counsel competent to prosecute class

actions, including consumer class actions, and she intends to prosecute this action

vigorously for the benefit of the class.

**F.      Common Questions Of Law Or Fact Predominate Over Individual
          Issues.**

118.   The questions of law or fact common to the members of the Class

predominate over any questions affecting only individual members.  The

overarching issue of whether the class members were improperly charged for

certain fees, such as attorney fees, is the same for every potential class member.

The precise identities of the class members and the amount of money improperly

charged to any particular class member is determinable using objective criteria and

common, manageable proof including the HUD-1 Forms maintained by First Horizon for IRRRL borrowers.

**G.    A Class Action Is Superior To Other Methods Of Resolution.**

119.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy, since joinder of all members of the class is impractical.

120.   As any injury suffered by each class member is relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to obtain relief.  In addition, many, if not the overwhelming majority, of the members of the proposed class are unaware that they have been improperly charged fees in connection with IRRRLs.  The interest of members of the Class in individually controlling the prosecution or defense of separate actions is not great given the small amount in controversy in individual cases and the difficulty of detection of the enterprise and proof of it.

121.   It is desirable to concentrate this litigation in one forum as opposed to having individual actions.  The interests of judicial economy favor adjudicating the claims as a class.

122.   There are no known difficulties likely to be encountered in the management of a class action.

## V.   <u>**DAMAGES CLAIMED**</u>

### A.   **Compensatory And RICO Damages Sought**

123.   Plaintiff seeks, on behalf of himself and the class, to recover all damages caused by the fraudulent scheme, including interest.

124.   Plaintiff claims, on behalf of himself and the class, special damages, including the amount of fees charged to him and them that federal law required be borne by the lender, First Horizon.

125.   Plaintiff claims, on behalf of himself and the class, special damages, including interest he and they have paid on the loan principal attributable to the fee that should have been borne by the lender.

126.   The action also seeks applicable RICO penalties, including treble damages, punitive damages, attorney fees, and reasonable costs of investigation and litigation, pursuant to O.C.G.A. § 16-14-6(c), as to Counts I and II.

### B.   **Uncapped Punitive Damages (Counts I and II)**

127.   Plaintiff seeks, on behalf of himself and the class, uncapped punitive damages, pursuant to O.C.G.A. § 51-12-5.1(f), because Defendants acted with

specific intent to cause harm.  Plaintiff seeks punitive damages in an amount to be determined by the enlightened conscience of a fair and impartial jury.

WHEREFORE, Plaintiff prays for the following relief:

(a)     That summons issue and service be perfected upon Defendant requiring it to appear before this Court and answer this Complaint;

(b)     That a class be certified as sought in this Complaint;

(c)     That Plaintiff and the class have a trial by jury;

(d)     That Plaintiff and the class recover all elements of compensatory damages and all such damages recoverable under Georgia law against Defendant as specified in this complaint;

(e)     That Plaintiff and the class recover uncapped punitive damages against Defendant to punish it for its misconduct and to deter it from future misconduct; and

(f)     That Plaintiff and the class have such other and further relief as this Court deems just and proper.

This 4th day of June, 2009.

                           Respectfully submitted,

                           DAUGHTERY, CRAWFORD,
                           FULLER & BROWN, LLP

                       BY:  /s/ Dustin T. Brown

1430 Wynnton Road               JASON L. CRAWFORD
Columbus, Georgia  31906       Georgia Bar No. 193752
Post Office Box 1118           jason@dcfblaw.com
Columbus, Georgia 31902        J. CLAY FULLER
Telephone: (706) 320-9646      Georgia Bar No. 280207
Facsimile: (706) 494-0221       clay@dcfblaw.com
                           DUSTIN BROWN
                           Georgia Bar No. 086998
                           dustin@dcfblaw.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on June 4, 2009, I electronically filed the within and foregoing pleading with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:

> Mr. Christopher S. Anulewicz
> Balch & Bingham LLP
> 30 Ivan Allen Jr. Boulevard
> Suite 700
> Atlanta, GA  30308
>
> Ms. Irene C. Freidel
> Ms. Stacey L. Gorman
> Mr. Brian R. Vaughn Martel
> K&L Gates LLP
> State Street Financial Center
> One Lincoln Street
> Boston, MA  02111-2950

DAUGHTERY, CRAWFORD,
FULLER & BROWN, LLP

By: /s/ Dustin T. Brown

1430 Wynnton Road                     Jason L. Crawford
Post Office Box 1118                   Georgia Bar No. 193752
Columbus, Georgia 31902               jason@dcfblaw.com
(706) 320-9646 phone                  J. Clay Fuller
(706) 494-0221 facsimile              Georgia Bar No. 280207
                                      clay@dcfblaw.com
                                      Dustin T. Brown
                                      Georgia Bar No. 086998
                                      dustin@dcfblaw.com